UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-60967-CIV-ROSENBAUM/HUNT

MARGARET R. MOTYL, as personal
representative of the Estate of Gary
Motyl,

    Plaintiff,

v.

FRANKLIN TEMPLETON COMPANIES,
LLC,

    Defendant.
_____/

**ORDER ON PLAINTIFF'S AMENDED MOTION FOR REMAND AND DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERT REPORT**

This matter is before the Court on Plaintiff Margaret Motyl's Amended Motion for Remand [ECF No. 35] and Defendant's Motion to Strike Plaintiff's Expert Report [ECF No. 43]. The Court has carefully reviewed the pending Motions, all supporting and opposing filings, and the record. For the reasons set forth below, the Court denies Plaintiff's Motion for Remand and denies Defendant's Motion to Strike.

**I.  Introduction**

On March 26, 2013, Plaintiff Margaret Motyl, as personal representative of her husband's estate, commenced this action against Defendant Franklin Templeton Companies, LLC ("Franklin Templeton"), asserting claims for breach of contract (Count I) and unjust enrichment (Count II) based on Defendant's alleged failure to pay the decedent's earned and accrued annual bonus for the 2011-2012 fiscal year. *See* ECF No. 1-2. Although initially filed in the Circuit Court of the

Seventeenth Judicial Circuit in and for Broward County, Florida, Franklin Templeton removed the case to this Court, alleging that federal subject-matter jurisdiction exists because (1) Plaintiff's claimed damages exceed $75,000,[1] and (2) the parties are completely diverse since Plaintiff is a citizen of Florida and Franklin Templeton is a citizen of California and Delaware.  *See* ECF No. 1.  Plaintiff, however, contests the Court's jurisdiction and requests that the Court remand the action to state court, arguing that Franklin Templeton is in fact a citizen of Florida, and therefore, complete diversity does not exist.

## II.  Legal Standard

A federal district court "may exercise subject-matter jurisdiction over a civil action in which only state law claims are alleged if the civil action arises under the federal court's diversity jurisdiction."  *Rietwyk v. State Farm Mut. Auto. Ins. Co.*, No. 09–82433–CIV, 2010 WL 2219730, at *1 (S.D. Fla. June 2, 2010).  Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and the parties are citizens of different states.  28 U.S.C. § 1332(a)(1).  As a general rule, diversity jurisdiction requires complete diversity—that is, "every plaintiff must be diverse from every defendant."  *Palmer v. Hosp. Auth.*, 22 F.3d 1559, 1564 (11th Cir. 1994).

The party invoking this Court's jurisdiction bears the burden of proof and must support its allegations of jurisdictional facts with competent proof.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010).  Although a defendant has a statutory right to remove an action to federal court, "the right of removal is strictly construed, as it is considered a federal infringement on a state's power to adjudicate disputes in its own courts."  *Rietwyk*, 2010 WL 2219730, at *1 (citing *Shamrock Oil &*

---

[1] Plaintiff estimates the value of the decedent's bonus to be well in excess of $2 million.  *See* ECF No. 1-2 at ¶¶ 17, 18.  Thus, neither party denies that the amount-in-controversy requirement is met.

*Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)). Thus, "when the court's jurisdiction over a case is doubtful, doubts are resolved in favor of remand." *Id.* (citing *Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th 1997)); *see also Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998) ("[I]t is axiomatic that ambiguities are generally construed against removal." (citation and internal quotation marks omitted)).

### III. Discussion

The thrust of the jurisdictional dispute in this case revolves around the citizenship of Franklin Templeton's sole member, Templeton Worldwide, Inc. ("TWI"). Because Franklin Templeton is a limited liability company, for purposes of diversity, it is deemed a "citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). Thus, the parties agree, TWI's citizenship is dispositive of whether the Court possesses subject-matter jurisdiction over the instant matter.

Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." In determining where a corporation's principal place of business is located, the Supreme Court has conclusively adopted the "nerve center" test. Under this standard, a corporation's principal place of business refers to the "place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz*, 559 U.S. at 93-94. In practice, this location will normally be the place where the corporation maintains its headquarters, assuming that "the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings." *Id.* at 94. Even where the bulk of a company's business activities that are visible to the public take place in one state, the principal place

of business will nonetheless be the state where the officers direct those activities. *See id.* at 95-96.

Defendant maintains that TWI's principal place of business is in San Mateo, California. According to Defendant, TWI is merely a "holding company that holds cash and investments for its various subsidiaries and its parent company." ECF No. 35-3 at 6. As a holding company, Defendant posits, "TWI does not conduct any 'business' at a 'physical address;' however, its key functions, including accounting and review and approval of capital contribution requests and dividend payments, are conducted at One Franklin Parkway, San Mateo, California." *Id.*

In support of this position, TWI's Executive Vice President, Kenneth Lewis, explains that a few times per year, Lewis and another TWI officer, Gwen Shaneyfelt—both of whom work in San Mateo, California—"review requests for capital contribution and dividend payments and distributions (which originate in California . . . ) and then make recommendations to TWI's board of directors as to whether those requests should be approved." ECF No. 42-1 at ¶ 9. After Lewis and Shaneyfelt make their recommendations, TWI's corporate secretary, who is located in San Mateo, California, prepares a formal Unanimous Written Consent form describing the proposed payment or distribution. *Id.* at ¶ 10. The form is then circulated to TWI's directors, who review the form and, upon approval, return a signed copy to the San Mateo, California, office. *Id.* at ¶¶ 10,11. Once approved by the board, the capital contributions and dividend payment and distributions are "coordinated and administered in San Mateo, California." *Id.* ¶ 12.

In addition to Defendant's assertion that the bulk of TWI's functions center around San Mateo, California, Defendant points out that the majority of TWI's directors and officers are located in San Mateo, California. In particular, six of TWI's eleven directors and officers work in San Mateo, California, including TWI's President/Director, Executive Vice President, Secretary,

Treasurer, and Vice President. ECF No. 42-2 at 8-9. Only two of TWI's officers work in Fort Lauderdale, Florida. *Id.* at 9.

Despite Defendant's assertions, Plaintiff argues that TWI is actually located in Florida because various corporate filings list an address located in Fort Lauderdale, Florida, as the corporation's "principal place of business." For example, Plaintiff cites to TWI's 2013 Foreign Corporation Annual Report filed with the Florida Department of State, which lists "300 SE 2nd Street, Fort Lauderdale, FL" as the corporation's "Current Principal Place of Business." *See* ECF No. 35-2. But this fact, alone, is insufficient to rebut Defendant's showing.

In *Mendez v. Jarden Corp.*, the Eleventh Circuit expressly rejected the plaintiff's use of a corporate filing to show that the defendant was a Florida entity. 503 F. App'x 930, 936 (11th Cir. 2013).[2] The Court highlighted the fact that the filing explicitly listed the defendant as a "Foreign Profit Corporation" and that the document did not actually establish that the company's headquarters or principal place of business was in Florida. *Id.* Rather, it merely represented that the defendant's "principal address for the purposes of its corporate filing with the Florida Secretary of State is in Florida." *Id.* Similarly, in this case, TWI's use of a Florida address in corporate filings does not conclusively establish that it is a Florida citizen for purposes of diversity. Indeed, the documents upon which Plaintiff relies identify TWI as a "foreign corporation" and also list a San Mateo, California, address as the corporation's mailing address. In addition, they show, consistent with Defendant's assertions, that most of TWI's officers are located in San Mateo. Moreover, it appears that TWI listed a California address in its state and federal tax returns. ECF No. 35-4 at 120.

---

[2] While *Mendez* is an unpublished—and therefore non-binding—decision of the Eleventh Circuit, it is nonetheless instructive.

Plaintiff also focuses on the fact that Franklin Templeton's Fort Lauderdale office provides various services to clients, including securities trading and portfolio management, as well as other services to different affiliated companies. ECF No. 35-4 at 33:10-37:15, 73:21-74:12. But these business activities are conducted by other Franklin Templeton entities, not TWI. Although Plaintiff relies on the deposition of Douglas Lempereur, a TWI officer, for its contention that TWI conducts business in Florida, Lempereur never testified to that. While Lempereur did explain the types of work performed out of the office building located in Fort Lauderdale, Lempereur never stated that that work was done on behalf of TWI. To the contrary, he repeatedly stated that he believes TWI to exist simply as a holding company with no direct employees. *See* ECF No. 35-4 at 16:6-8, 62:10-63:9, 67:7-69:3, 79:3-7. Indeed, Lempereur testified that he has had no involvement with TWI since 2005, and he did not even know that he was still listed as an officer of the company. *Id.* at 121:5; 29:13. Ultimately, the mere fact that various Franklin Templeton subsidiaries and affiliates conduct business in Florida has no bearing on whether TWI has its principal place of business in Florida.[3]

---

[3] Plaintiff also submits the expert opinion of Charles Porten, a Chartered Financial Analyst who holds a Master of Business Administration in Finance. ECF No. 35-3. In his affidavit, Porten opines that "TWI's 'nerve center' is actually based in Fort Lauderdale, Florida." *Id.* at 5. Porten states that he based this opinion on his review of Plaintiff's Complaint, Defendant's Notice of Removal, Defendant's Answers to Plaintiff's First Set of Interrogatories, the deposition transcript of Douglas Lempereur, various corporate filings, and case law. *Id.* at 2.

It is well settled that an expert "may not testify as to his opinion regarding ultimate legal conclusions." *United States v. Long*, 300 F. App'x 804, 814 (11th Cir. 2008) (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)). In this regard, "an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *Okland Oil Co. v. Conoco, Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998) (citation omitted).

Here, Porten's purported analysis under *Hertz* and his resulting opinion that TWI's "nerve center" is in Fort Lauderdale amounts to nothing more than a conclusion of law, the determination of which is squarely within the province of the Court. The facts are not in controversy, and Porten offers no factual opinion, merely reiterating the same evidence that is already in the record. Indeed, Porten does nothing more than offer his own conclusion as to the

Under *Hertz*, the Court's inquiry in this matter is expressly limited to determining the location where TWI's officers "direct, control, and coordinate the corporation's activities." Despite Plaintiff's attempts to show that TWI is principally located in Florida, the record before the Court clearly indicates that the majority of TWI's officers and directors operate out of San Mateo, California, and that the bulk of TWI's business activities occur in or are directed to San Mateo, California. In light of these facts, Franklin Templeton has met its burden of establishing that TWI's nerve center is in San Mateo, California. Therefore, complete diversity exists among the parties.

### IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Amended Motion for Remand [ECF No. 35] is **DENIED**. Defendant's Motion to Strike Plaintiff's Expert Report [ECF No. 43] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale Florida, this 11th day of April 2014.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

---

very legal issue that the Court alone is obligated to resolve. Such an opinion is improper.

Although Defendant requests that the Court strike Porten's expert report, Rule 12(f), Fed. R. Civ. P., permits the Court to strike material in a "pleading" only. *See Riviera S. Apartments, Inc. v. QBE Ins. Co.*, No. 07-60934-CIV, 2007 WL 2506682 (S.D. Fla. Aug. 30, 2007). Because the affidavit is not a pleading, the Court denies Defendant's request to strike it from the record. Nonetheless, because the Court agrees that the report offers an impermissible legal conclusion, the Court simply declines to consider Porten's affidavit in resolving Plaintiff's Motion for Remand.